UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH SMITH,

     Petitioner,                       CASE NO. 2:19-cv-10706

v.                                  PAUL E. BORMAN
                                  UNITED STATES DISTRICT JUDGE

RANDEE REWERTS,

     Respondent.
_____/

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Joseph Smith, a state prisoner in the custody of the Michigan

Department of Corrections, filed a *pro se* habeas corpus petition challenging his

Wayne County, Michigan conviction for first-degree criminal sexual conduct. *See*

Mich. Comp. Laws § 750.520b(1)(f) (sexual penetration of another person, using

force or coercion and causing personal injury to the victim). Petitioner alleges as

grounds for relief that (1) the trial court committed reversible error when it

prevented defense counsel from asking the complainant about his mental state, and

(2) there was insufficient evidence that he used force or violence to accomplish

sexual penetration. *See* Pet. (ECF No. 1 at 5, 7, PageID.5, 7), and Petitioner's

supporting brief (ECF No. 11 at i, 7-12, PageID.526, 537-542).

Respondent filed an answer to the habeas petition in which he argues that Petitioner procedurally defaulted his first claim and that the state appellate court's decision on both claims was not objectively unreasonable. *See* Answer in Opp'n to Pet. for Writ of Habeas Corpus (ECF No. 8, PageID.32, 36).

The Court agrees with Respondent. Accordingly, the Court will deny the habeas petition and decline to issue a certificate of appealability, but grant Petitioner leave to appeal this decision *in forma pauperis.*

## I. Background

Petitioner waived his right to a jury trial and was tried before a judge in Wayne County Circuit Court. The Michigan Court of Appeals accurately summarized the facts adduced at trial as follows:

> This case arises out of the sexual assault of the victim by defendant on the evening of June 8, 2005. According to the testimony of the victim, he attended a party at a friend's house that evening near the intersection of Lahser Road and Keeler Street in Detroit, where he consumed alcohol and smoked marijuana. Around 10:00 p.m., the victim left his friend's house and began walking to a nearby bar where he expected to find a ride to his girlfriend's house. When he stopped at an intersection to search in his pockets for a lighter to light his cigarette, defendant pulled up in his vehicle, rolled down the passenger-side window, and asked if the victim had a spare cigarette. The victim responded that he would give defendant a cigarette if defendant could provide a light. Defendant agreed to the exchange, and the victim got into the vehicle where the two men continued conversing. Defendant told the victim that he was looking for a female prostitute, and the victim told defendant that he had not seen any prostitutes in the area. According to the victim, he then asked defendant if he was going in the direction of the bar that the victim was trying to reach; defendant replied that he was not going that way, and began to drive away with the victim still in

2

the vehicle.  The victim said that he needed to get out of the vehicle, and defendant drove around the block and stopped the vehicle.

As the victim began to exit the vehicle, defendant asked for a couple more cigarettes.  The victim testified that he recalled pulling the cigarettes out of the pack. The next thing he remembered was waking up facedown in the passenger seat with a bump on his forehead.  The seat was completely reclined, defendant was on top of him, and defendant's hand was on the back of the victim's neck, holding him down while defendant penetrated the victim's anus. When the victim struggled, defendant repeatedly hit him on the back of the head.  The victim reached the door handle and opened the passenger-side door. When the cabin light illuminated the interior of the vehicle and the door chime sounded, defendant released his grip on the victim's neck and the victim "rolled out" of the vehicle and crawled away, then stood up, pulled his pants up, and ran to some nearby bushes where he hid.

The victim then called his mother using his cell phone and asked her to pick him up and take him to the hospital because "something really horrible" had happened. According to the testimony of the victim's mother, when she picked him up the victim was crying hysterically, half sitting on the passenger's seat and half on the floor of the vehicle. The victim would not tell his mother what had happened and said it was "too awful."  At the hospital, the victim asked his mother to wait in the car while he went into the emergency room.  He told the security guard that he had been raped, and was taken into an examining room.  Dr. Robert Matthews, a physician at the hospital, testified that a sexual assault examination was performed which resulted in DNA evidence begin (sic) obtained.  The doctor noted that the victim was not able to identify his alleged assailant and that the medical records indicated that the victim was in moderate distress and was "very emotional and tearful." Although the victim complained of pain in his head, Dr. Matthews did not note any signs of physical trauma, other than rectal bleeding, which may have come from ruptured external hemorrhoids. The doctor testified that any trauma to the rectal area may have caused the hemorrhoids to rupture and bleed.  The victim testified that he was so embarrassed that he did not wait for police, but instead left the hospital without being discharged, still in his hospital gown, and that his mother drove him home.

> The evidence from the sexual assault examination was picked up by Detroit Police officers later that night, but due to a backlog within the Detroit Police Department the evidence was not processed until February 3, 2014.  A DNA analyst at Bode Technology processed the samples and testified that foreign DNA was detected from the rectal swab.  The results were thereafter analyzed by a forensic scientist with the Michigan State Police Biology Unit, who testified that the foreign DNA found on the victim's rectal swab matched defendant's profile, which already was on file in the Combined DNA Index System (CODIS).  The DNA from the victim's rectal swab was again matched to defendant's DNA obtained through a search warrant.

*People v. Smith*, No. 334953, 2017 WL 6389911, at *1 - *2 (Mich.  Ct. App. Dec. 14, 2017) (unpublished).

Petitioner did not testify or present any witnesses.  His defense was that there were reasons to doubt the complainant's version of the events and to conclude that the sexual encounter was consensual.  He also maintained that there was no clear evidence of physical injury.  *See* 8/8/16 Trial Tr. at 13 (ECF No. 9-6, PageID.135); 8/9/16 Trial Tr. at 46-63 (ECF No. 9-7, PageID.346-63).

On August 9, 2016, the trial court found Petitioner guilty, as charged, of first-degree criminal sexual conduct.  *See* 8/9/16 Trial Tr. at 79 (ECF No. 9-7, PageID.379).  Although the court acknowledged certain inconsistencies in the evidence and questioned why the complainant entered Petitioner's car, the court found the complainant's testimony to be "sufficiently consistent" and credible.  (*Id.*

at 78, PageID.378.)[1] The court noted the DNA evidence and concluded that Petitioner had penetrated the complainant's anal opening, using force or coercion. (*Id*. at 78-79, PageID.378-79.) On August 31, 2016, the trial court sentenced Petitioner to prison for twelve to twenty years, with credit for 209 days already served. *See* 8/31/16 Trial Tr. at 16 (ECF No. 9-8, PageID.396).

Petitioner raised his habeas claims in an appeal of right. The Michigan Court of Appeals rejected Petitioner's arguments and affirmed his conviction in an unpublished, *per curiam* opinion. *See Smith,* 2017 WL 6389911. Petitioner raised the same two claims in the Michigan Supreme Court, which denied leave to appeal on April 3, 2018, because it was not persuaded to review the questions presented to the court. *See People v. Smith*, 501 Mich. 1040 (2018). Petitioner subsequently filed his habeas corpus petition, and Respondent filed his answer in opposition to the petition.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2)

---

[1] At Petitioner's sentencing, the court once again stated that there were some inconsistencies in the evidence, but that it found the complainant to be credible overall. *See* 8/31/16 Sentencing Tr. at 16 (ECF No. 9-8, PageID.396).

'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt[.]'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal and end citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Only an 'objectively unreasonable' mistake, . . . one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir. 2019) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), and then *Richter*, 562 U.S. at 103). "That's a 'high bar' to relief, which 'is intentionally difficult to meet.'" *Kendrick v. Parris,* 989 F.3d 459, 469 (6th Cir.) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)), *cert. denied*, 142 S. Ct. 483 (2021).

## III.  Discussion

## A.  Exclusion of Evidence

Petitioner argues first that the trial court erred when it prevented defense counsel from questioning the complainant about his mental state following the incident in question.  Petitioner contends that preventing a defendant from eliciting facts about a witness's bias, prejudice, or lack of credibility violates the right of confrontation and that a witness's mental state is relevant because strong emotions can impact a person's perception and memory of the crime.  As further support for his claim, Petitioner alleges that the prosecutor made the complainant's mental state an issue when it questioned him and the treating physician about the complainant's emotional state.  *See* Petitioner's supporting brief (ECF No. 11, PageID.537-40).

The record indicates that defense counsel was not prevented from asking the complainant about his mental state.  Rather, he was prevented from asking the complainant about his history of mental illness.  The Michigan Court of Appeals rejected Petitioner's argument about the trial court's alleged abuse of discretion because the complainant's history of mental illness was irrelevant and, therefore, not admissible.  The Court of Appeals also determined that the alleged error was not outcome determinative.  *See Smith*, 2017 WL 6389911, at *3-*4.  The Court of Appeals rejected Petitioner's constitutional argument regarding the right of

confrontation because Petitioner did not preserve that portion of his claim for appellate review and because the argument also lacked merit. *Id*. at *2, *4.

Petitioner's claim that the trial court abused its discretion under state court fails because "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*¸ 465 U.S. 37, 41 (1984). When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). As for Petitioner's constitutional argument, Respondent contends that the argument is procedurally defaulted.

### 1. Procedural Default

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Pursuant to the related doctrine, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "A habeas petitioner procedurally defaults a claim when '(1) [he] fails to comply with a state procedural rule; (2) the state courts enforce the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim.'" *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (quoting *Wheeler v. Simpson*, 852 F.3d 509, 514 (6th

8

Cir. 2017) (quoting *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (*en banc*)), *cert. denied*, 142 S. Ct. 482 (2021).

### a. The State Procedural Rule

The relevant state procedural rule here is "the general and longstanding rule in Michigan that 'issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.'" *People v. Cain*, 498 Mich. 108, 114 (2015) (quoting *People v. Grant,* 445 Mich. 535, 546 (1994)). This contemporaneous-objection rule "provides the trial court 'an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights.'" *People v. Carines*, 460 Mich. 750, 764-65 (1999) (quoting *Grant*, 445 Mich. at 551).

Defense counsel argued at trial that he should be permitted to question the complainant about his mental illness because it was relevant to the complainant's state of mind and observations. *See* 8/8/16 Trial Tr. at 66-67 (ECF No. 9-6, PageID.188-89). He did not argue that Petitioner's right to confront the witnesses against him would be violated by his inability to question the complainant about any mental illness, and "[a]n objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v. Stimage*, 202 Mich. App. 28, 30 (1993). By failing to object at trial on the same

9

constitutional ground that he raised in the Michigan Court of Appeals, Petitioner violated Michigan's procedural rule regarding contemporaneous objections and the preservation of issues for appellate review. *See Theriot*, 982 F.3d at 1003-04. The first procedural-default factor is satisfied.

### b.  Enforcement of the Rule

The Michigan Court of Appeals reviewed Petitioner's constitutional argument for "plain error" because defense counsel did not object on constitutional grounds at trial. *See Smith*, 2017 WL 6389911, at *2, *4. A state court's "plain error" review is an impediment to review on the merits and constitutes enforcement of a procedural rule. *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021) (citing *Williams v. Burt*, 949 F.3d 966, 973 (6th Cir.), *cert. denied*, 141 S. Ct. 276 (2020)); *accord Theriot*, 982 F.3d at 1004 (stating that "a state appellate court's review for plain error is enforcement of a procedural rule"); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("[W]e view a state appellate court's review for plain error as the enforcement of a procedural default."). Therefore, the second procedural-default factor is satisfied.

### c.  Adequacy of the Rule

The third procedural-default factor requires a determination of whether the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim. The Sixth Circuit Court of Appeals has

determined that "Michigan's contemporaneous-objection rule 'constitutes an adequate and independent state ground for foreclosing federal review.'" *Theriot*, 982 F.3d at 1004 (citing *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011)). Thus, the third procedural-default factor is satisfied.

### d. Cause and Prejudice; Miscarriage of Justice

"A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" *Davila v. Davis*, 137 S. Ct. 2058, 2064-2065 (2017) (quoting *Wainwright v. Sykes,* 433 U.S. 72, 84 (1977)). Because Petitioner has not alleged "cause and prejudice" for his procedural default, he has "abandoned any argument regarding cause and prejudice." *Wheeler*, 852 F.3d at 515.

In the absence of "cause and prejudice," a habeas petitioner may pursue procedurally defaulted claims if he can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be

11

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented the Court with any new and reliable evidence of actual innocence. Therefore, a fundamental miscarriage of justice would not result from this Court's failure to adjudicate the substantive merits of Petitioner's claim. His claim is procedurally defaulted.

## 2. The Merits

The Court finds for the following reasons that Petitioner's constitutional argument also lacks substantive merit.

### a. Clearly Established Federal Law

The Sixth Amendment to the United States Constitution provides that the accused in all criminal prosecutions "shall enjoy the right . . . to be confronted with the witnesses against him[.]"  U.S. Const. amend. VI.  This right is "made applicable to the States through the Fourteenth Amendment," *Idaho v. Wright*, 497 U.S. 805, 813 (1990), and a primary interest secured by the Sixth Amendment's Confrontation Clause is the right of cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

12

The Supreme Court, however, has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citing *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973)).  The Constitution leaves to judges who must make decisions on the admissibility of evidence "'wide latitude' to exclude evidence that is 'repetitive ..., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"  *Id*. at 689–90 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).  Stated differently, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).

The exclusion of evidence is unconstitutional only if it "significantly undermine[s] fundamental elements of the defendant's defense." *United States v. Scheffer*, 523 U.S. 303, 315 (1998).  A habeas "[c]ourt's duty 'is not to determine whether the exclusion of the evidence by the trial judge was correct or incorrect under state law, but rather whether such exclusion rendered [the] petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'"

*Lewis v. Wilkinson*, 307 F.3d 413, 420 (6th Cir. 2002) (quoting *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982)).

### b. Application of the Law

In the present case, defense counsel asked the complainant whether he was taking any medication before the incident.  The prosecutor objected, but the trial court overruled the objection because defense counsel argued that the complainant's state of mind was relevant.  The complainant then stated that he had not been on any medication at the time.  *See* 8/8/16 Trial Tr. at 66 (ECF No. 9-6, PageID.188).  Immediately after that response, defense counsel asked the complainant whether he had a history of mental illness, and the complainant answered, "Yes, I do."  The prosecutor then objected on the ground that the complainant's history of mental illness was not relevant.  The trial court sustained the prosecutor's objection and struck the complainant's answer.  (*Id.*)

"The exclusion of evidence on the grounds of relevancy is within the discretion of the trial court," *McLaurin v. Fischer*, 768 F.2d 98, 104 (6th Cir. 1985), and the complainant's history of mental illness was not a relevant issue at Petitioner's trial.  As pointed out by the Michigan Court of Appeals, Petitioner

> makes no attempt to articulate a theory of how the victim's alleged mental illness tended to show that he was more likely to falsely accuse defendant of sexual assault. Furthermore, defendant does not demonstrate that during the relevant time-frame the victim exhibited a disposition to lie or hallucinate, or that he had an impaired ability to perceive and tell the truth.  Although a history of false accusations by a

14

victim of sexual assault is relevant in CSC cases, defendant does not argue that the victim had a history of false sexual assault accusations. . . .   [N]othing in the record suggests that the victim's allegations were the result of mental illness.

*Smith*, 2017 WL 6389911, at *3.

Furthermore, defense counsel was not prevented from pursuing the defense that the complainant was not credible.  He thoroughly cross-examined the complainant and attempted to impeach the complainant with inconsistencies in his testimony.  And he was permitted to ask the complainant whether the drinks and marijuana that he had consumed before his encounter with Petitioner affected his memory or ability to tell reality from fantasy.  *See* 8/8/16 Trial Tr. at 111 (ECF No. 9-6, PageID.233).

Defense counsel also elicited the emergency physician's testimony that the complainant had some psychological history, *see id*. at 82, PageID.204, and that the complainant's medications at the time were two antidepressant medications, *see id*. at 90-91, PageID.212-13.  At the close of the proofs, defense counsel argued that the complainant had psychological issues which may have affected his mental state.  *See* 8/9/16 Trial Tr. at 55-56 (ECF No. 9-7, PageID.355-56).  The trial court, moreover, in its findings of fact and conclusions of law acknowledged the complainant's psychiatric history and the many inconsistences that defense counsel had pointed out at trial.  (*Id*. at 72, 74, PageID.372, 374.)

The limits placed on defense counsel's cross-examination of the complainant did not significantly undermine fundamental elements of Petitioner's defense. Therefore, Petitioner's right of confrontation was not violated.

### 3. Summary

Petitioner's first claim is procedurally defaulted and meritless. Accordingly, the state appellate court's conclusion – that the trial court did not abuse its discretion or commit plain error by limiting cross-examination of the complainant regarding his history of mental illness – was objectively reasonable. Petitioner has no right to relief on his claim.

## B. Sufficiency of the Evidence

Petitioner's second and final claim alleges that there was insufficient evidence at trial that he used physical force or violence to penetrate the complainant. *See* Pet. at 7 (ECF No. 1, PageID.7), and Petitioner's supporting brief at 11-12 (ECF No. 11, PageID.541-42). Petitioner points out that the treating physician did not observe any bruises or trauma on the complainant's body, except for external hemorrhoids and dried blood on the buttocks. *See* 8/8/16 Trial Tr. at 83-87, 93 (ECF No. 9-6, PageID.205-09, 215). The physician also testified that a sexual assault does not immediately cause an external hemorrhoid. (*Id*. at 87, PageID.209.) Petitioner argues that something more than the complainant's unsubstantiated claims of physical injury is needed for his conviction to stand and

that there was insufficient evidence of some physical act of violence or force.  *See*

Petitioner's supporting brief (ECF No. 11, PageID.542).

The Michigan Court of Appeals disagreed with Petitioner's argument.  The

Court of Appeals determined that a rational trier of fact could find force or

coercion was used to accomplish the sexual penetration and that the evidence was

sufficient to find Petitioner guilty of criminal sexual conduct in the first degree.

*See Smith*, 2017 WL 6389911, at *4 - *5.

## 1.  Clearly Established Federal Law

The Supreme Court has held "that the Due Process Clause [of the Fourteenth

Amendment] protects the accused against conviction except upon proof beyond a

reasonable doubt of every fact necessary to constitute the crime with which he is

charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  Following *Winship*, the

critical inquiry on review of a challenge to the sufficiency of the evidence

supporting a criminal conviction "is whether, after viewing the evidence in the

light most favorable to the prosecution, *any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt."  *Jackson v.

Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"[R]eview of a state-court conviction for sufficiency of the evidence is very

limited" because federal habeas courts "give two layers of deference to state-court

convictions."  *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018).  "First, . .

17

. 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam* opinion quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)).  And second, on habeas review, a federal court may overturn a state court decision rejecting a sufficiency of the evidence challenge "only if the state court decision was 'objectively unreasonable.'"  *Id.* (quoting *Smith*, 565 U.S. at 2) (quoting *Lett*, 559 U.S. at 733); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court").

### 2.  Application of the Law

The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.  To establish first-degree criminal sexual conduct, as charged in Petitioner's case, the prosecutor had to prove that Petitioner sexually penetrated the complainant, using force or coercion and causing personal injury to the complainant.  Mich. Comp. Laws § 750.520b(1)(f).

Petitioner is not alleging that there was insufficient evidence that he penetrated the complainant.  Instead, he is disputing the "personal injury" and "force or coercion" elements of the crime.

### a. Personal Injury

"Personal injury" is defined in the statute as "bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ."  Mich. Comp. Laws § 750.520a(n).  "[I]f the evidence of any one of the listed definitions is sufficient, then the element of personal injury has been proven.  *People v. Asevedo*, 217 Mich. App. 393, 397 (1996).

! The complainant in Petitioner's criminal case testified that when he regained consciousness in Petitioner's car, he "had a big egg—shaped knot on [his] forehead."  *See* 8/8/16 Trial Tr. at 19 (ECF No. 9-6, PageID.141).  He speculated at trial that Petitioner had hit him with something, because he had become unconscious immediately.  (*Id*. at 54, PageID.176.)  He also testified that Petitioner punched or hit him on the head multiple times (*id*. at 64, PageID.186) and that his head hurt on the way home from the hospital (*id*. at 102, PageID.224).

Later, at the hospital, it was determined that the complainant had external hemorrhoids and dried blood on his buttocks.  (*Id*. at 76, 93, PageID.198, 215.) He testified at trial that blood came from his rectum at the time and that staff at the hospital took his bloody clothes from him.  (*Id*. at 26, PageID.148.)

Although the emergency physician testified that a sexual assault cannot immediately cause an external hemorrhoid, the physician also said that a person can bleed from an external hemorrhoid during anal intercourse or during any

penetration or trauma to that part of the body.  (*Id*. at 87-88, 94, PageID.209-10,

216.)  A rational trier of fact could have concluded from testimony about the

complainant's bleeding and head pain that the complainant suffered "bodily

injury" from the sexual penetration.

There was additional evidence that the complainant suffered mental anguish

from the sexual penetration.  He testified that he was hysterical when he

telephoned his mother and when he was examined at the hospital.  (*Id*. at 22, 99,

116, PageID.144, 221, 238.)  His emotions were "overwhelming."  In fact, he was

so ashamed and embarrassed that he did not report the incident to the police or

disclose the incident to anyone else except staff at the hospital.  (*Id*. at 23-24,

PageID.145-46.)

Years later, after Petitioner had been identified as a suspect through DNA,

the complainant did not want to see Petitioner, identify him, or even testify in

court, because he "wanted this to go away."  (*Id*. at 104, PageID.226.)  Evidence

that the complainant was hysterical at the time of the sexual encounter, was very

upset immediately after the incident, and experienced residual emotional suffering

afterward is sufficient to support a conviction for first-degree criminal sexual

conduct under a personal injury, mental anguish theory.  *People v. Izzo*, 116 Mich.

App. 255, 258-60 (1982).

Furthermore, although the testimony of a victim need not be corroborated in prosecutions for first-degree criminal sexual conduct, Mich. Comp. Laws Ann. § 750.520h, the complainant's mother testified that the complainant was screaming and crying when he called her to come and get him. *See* 8/8/16 Trial Tr. at 119 (ECF No. 9-6, PageID.241.) On the way to the hospital, the complainant was hysterical and scrunched down in the car, almost to the floor. Later, on the way home, he was crying and upset. (*Id*. at 120-22, PageID.242-44.)

The medical report stated that the complainant was moderately distressed. (*Id*. at 78-79, PageID.200-01.) Elsewhere in the report, the complainant was described as being "very emotional and tearful." (*Id*. at 79, PageID.201.)

A rational trier of fact could have concluded from the evidence at trial that the complainant suffered mental anguish, as well as bodily injury, due to the alleged criminal sexual conduct. Thus, there was sufficient evidence of "personal injury" under the statute.

### b.  Force of Coercion

The remaining issue is whether force or coercion was used to accomplish sexual penetration. "Force or coercion" includes situations where "the actor overcomes the victim through the actual application of physical force or physical violence." Mich. Comp. Laws § 750.520b(1)(f)(i).

The complainant testified that he did not want Petitioner to penetrate him, *see* 8/8/16 Trial Tr. at 28 (ECF No. 9-6, PageID.150), and after he regained consciousness, Petitioner was on top him, holding him down by the neck or head while penetrating him.  (*Id*. at 19-20, PageID.141-43.)  He tried to push Petitioner off him and to get up, but Petitioner kept hammering or pounding him on the head.  (*Id*. at 20-21, 27, 64, PageID.142-43, 149, 186.)  A rational trier of fact could have concluded from this testimony that Petitioner used force to penetrate the complainant.  Therefore, the "force or coercion" component of the crime was satisfied.

### 3.  Summary

The evidence at trial, taken in the light most favorable to the prosecution, established that Petitioner used force or coercion to sexually penetrate the complainant and caused personal injury during the incident.  The evidence was sufficient to support Petitioner's conviction, and the state appellate court's rejection of Petitioner's claim was objectively reasonable.  Petitioner has no right to relief on his claim.

### IV.  Conclusion

The Michigan Court of Appeals was the last state court to adjudicate Petitioner's claims on the merits, and its decision was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an

22

unreasonable determination of the facts.  The state court's decision also was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement.  Accordingly, the petition for a writ of habeas corpus is **DENIED**.

A state prisoner seeking relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of a habeas petition.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Instead, the prisoner must first seek and obtain a certificate of appealability.  *Id.*; *see also* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller–El,* 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Further, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues deserve encouragement to proceed further.  The Court, therefore, **DECLINES** to issue a

certificate of appealability.  Nevertheless, if Petitioner appeals this decision, the Court **ORDERS** that he may proceed *in forma pauperis* on appeal because he was granted *in forma pauperis* status in this Court, *see* ECF No. 3, and an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. 24(a)(3)(A).

      **IT IS SO ORDERED**.

s/Paul D. Borman
PAUL D. BORMAN
United States District Judge

Dated: March 21, 2022